**2026 IL 130919**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 130919)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
COURTNEY B. VESEY, Appellant.

*Opinion filed January 23, 2026.*

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Justices Theis, Overstreet, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

Chief Justice Neville specially concurred, with opinion.

## OPINION

¶ 1     Defendant, Courtney B. Vesey, was charged with two counts of aggravated battery of a police officer (720 ILCS 5/12-3.05(d)(4) (West 2022)), following an altercation with police officers from the Rock Island Police Department. At the conclusion of his trial, the Rock Island County circuit court rejected defendant's

request that the jury be given a self-defense instruction before its deliberations. The court found that defendant failed to show that there was some evidence of each element of self-defense to justify the instruction. On appeal, the Appellate Court, Fourth District, affirmed after creating a two-step inquiry for cases involving a claim of self-defense against a police officer. Under this inquiry, the court must first "consider whether the trial record contains sufficient evidence of excessive force, as governed by section 7-5" of the Criminal Code of 2012 (Criminal Code) (*id.* § 7-5). 2024 IL App (4th) 230401, ¶ 28. If there is insufficient evidence, the Fourth District found section 7-7 (720 ILCS 5/7-7 (West 2022)) prohibits the defendant from raising self-defense as an affirmative defense. 2024 IL App (4th) 230401, ¶ 28. If there is sufficient evidence, the court would move to the second part of the inquiry, where the court would apply the six-element test established by this court for evaluating claims of self-defense. *Id.* The Fourth District rejected a holding from the Appellate Court, Third District, in *People v. Ammons*, 2021 IL App (3d) 150743, ¶ 21, and similar cases that *required* a jury instruction on self-defense where a defendant is charged with aggravated battery of a police officer and there is evidence that the officer used excessive force. 2024 IL App (4th) 230401, ¶ 28.

¶ 2    Defendant filed a petition for leave to appeal asking us to resolve a conflict between the districts of the appellate court regarding "whether a showing of excessive police force alone is enough to mandate a self-defense jury instruction." For the following reasons, we find that, in determining whether there is some evidence to justify a self-defense jury instruction, a police officer's use of force should be considered within the long-standing, six-element test acknowledged by this court in *People v. Jeffries*, 164 Ill. 2d 104, 127-28 (1995). A review of the record in this case reveals there was some evidence of each element, and the jury should have been instructed on self-defense. As a result, we reverse the judgments of the appellate court and the trial court.

¶ 3                                    I. BACKGROUND

¶ 4    On June 29, 2022, defendant was charged by information with two counts of aggravated battery following an altercation with police officers from the Rock Island Police Department. Count I alleged that defendant knowingly made contact

of an insulting and provoking nature with Sergeant Kristopher Kuhlman by pushing his arm away in violation of section 12-3.05(d)(4) of the Criminal Code (720 ILCS 5/12-3.05(d)(4) (West 2022)). Count II alleged defendant knowingly made contact of an insulting and provoking nature with Officer Brett Taylor by wrapping his arm around his neck, in violation of section 12-3.05(d)(4). *Id.*

¶ 5 Before trial, defendant filed a notice of affirmative defense pursuant to Illinois Supreme Court Rule 413(d) (eff. July 1, 1982), asserting that he would raise the affirmative defense of justifiable use of force in self-defense as provided under sections 7-1 and 7-14 of the Criminal Code (720 ILCS 5/7-1, 7-14 (West 2022)).

## A. Jury Trial

¶ 7 On March 9, 2023, defendant's trial began with his ex-wife, Judinetta Robinson, testifying for the prosecution. She testified that after the couple's divorce, she was granted custody of their daughter, A.V., and defendant was granted visitation rights. On June 28, 2022, A.V. was visiting defendant when Robinson received a text message from A.V. that stated, "We're going to heaven." Robinson was alarmed and sent A.V. a text message asking for clarification on what the message meant and then called her. During the call, Robinson overheard defendant say, "Stop playing with me, Judy. You know who I am. I'm God. May [*sic*] chariot is coming. It's descending down and we are going to heaven."

¶ 8 Robinson called the police and relayed the information she had received from A.V. and overheard from defendant. She told the police defendant and A.V. were at Longview Park in Rock Island. Robinson drove to the park from her home in Davenport, Iowa, approximately 20 minutes away. When she arrived, Robinson noted that A.V. was upset. Robinson spoke to the responding officers, who decided A.V. would go home with her. After the responding officers decided A.V. would leave with Robinson, defendant approached the area where Robinson and A.V. were located. Defendant was aggressive, and "[h]e got loud." Robinson acknowledged that taking A.V. home was against the court-ordered parenting agreement because it was defendant's day to have visitation with her. As the situation between defendant and the police officers escalated, Robinson took A.V. to her car. The police officers later referred the case to the Department of Children and Family Services (DCFS), which investigates allegations of abuse or neglect of

children. Following an investigation, DCFS concluded any allegations against defendant were unfounded.

¶ 9 Taylor testified that he responded to Longview Park after receiving information through dispatch indicating that Robinson wanted a welfare check on A.V. At that time, Taylor had been with the Rock Island Police Department for six months and was on field training. He was accompanied by his field training officer, Eugenio Barrera, and Kuhlman. When Taylor arrived at Longview Park, he saw defendant sitting with his daughter, which did not cause any concern. Taylor patted defendant down, and defendant complied. Taylor and the other officers talked to defendant, and he made statements regarding reptiles and lizards in a closet that caused the officers' concern. A.V. walked away as the officers talked to defendant, and Kuhlman followed her to talk to her, which caused defendant to raise his voice and tell Kuhlman not to talk to her. Defendant eventually calmed down. Taylor testified that, after Robinson arrived at the park, there was a decision that A.V. would go with her and DCFS would be notified. The officers decided no one would be arrested or charged with a crime.

¶ 10 When defendant was informed that A.V. would leave with Robinson, he became angry and raised his voice. Taylor acknowledged this reaction was understandable. The officers were standing between defendant and A.V. and Robinson. Defendant tried to walk through the officers. Taylor testified that as part of his training and experience, when a person becomes agitated, officers do not want the individual to come closer to them because of the weapons and equipment that the officers carry. To keep an individual at bay, officers would initially give verbal commands before using other methods. Defendant was given verbal commands as he tried to approach the officers. Defendant became more agitated and approached Kuhlman and Barrera. Kuhlman stuck his arm out and touched defendant's chest. Defendant responded by pushing Kuhlman's arm away. Having witnessed this, Taylor believed defendant had committed a criminal offense— aggravated battery to a police officer.

¶ 11 Taylor testified that he used a variety of methods to effectuate arrests for criminal offenses. His preferred method was to inform a person he was under arrest and have him place his hands behind his back. He was also authorized to use force depending on the totality of the circumstances and a person's actions. In attempting

to arrest defendant, Taylor testified he did not use his preferred method of effectuating an arrest "[d]ue to the [d]efendant's aggressive demeanor and him already committing a felony to a police officer." Instead, he determined a "hands-on" approach was the most appropriate method. In the seconds he had to decide whether to use force, Taylor considered how many officers were on the scene, how close Robinson and A.V. were, and the surrounding area. Taylor then decided to push defendant into the grassy area behind him. Taylor did not inform defendant he was being detained or placed under arrest before he pushed him.

¶ 12        As he began pushing defendant, defendant wrapped both arms around the back of Taylor's head, and they both fell backward over a retaining wall into the grass. Defendant's arms remained around Taylor's neck for about five seconds after they landed on the ground, until the other officers assisted Taylor. Taylor testified defendant's actions hindered his ability to arrest him. However, Taylor acknowledged that he did not attempt to arrest defendant in a peaceful way.

¶ 13        Kuhlman testified that after defendant was informed that A.V. would leave with Robinson, defendant tried to walk through the police officers to get to his daughter, who was standing behind them with Robinson. Kuhlman tried to prevent this because he thought defendant was going to try and take his daughter or yell at Robinson. The situation escalated further after Kuhlman asked defendant if he was suicidal and if he wanted to go to the hospital. To stop defendant from advancing any further, Kuhlman pushed defendant back with his hand, which Kuhlman deemed to be a reasonable amount of force. Kuhlman testified that defendant did not touch him first but, based on his training and experience, he believed he did not need to wait for defendant to touch him before using force. Defendant responded to Kuhlman's push by hitting his arm away and telling him not to touch him. Kuhlman testified that he was not in pain or injured by defendant's contact. Nevertheless, he believed that he had probable cause to arrest defendant. Kuhlman did not inform defendant that he was detained or under arrest and could not recall if Taylor did so. The State played videos of the footage from the officers' body cameras for the jury.

¶ 14        At the end of the State's case, defendant informed the court he would not testify, as the body camera footage "explain[ed] everything" that happened.

¶ 15                            1. *Body Camera Footage*

¶ 16        The footage showed that the officers arrived at the park and found defendant sitting on a concrete-brick retaining wall with his daughter. An officer informed defendant that the police had received a call from Robinson and she was worried about defendant and A.V. because of statements defendant had made. Defendant stated that his daughter was fine and they were just walking around the park. Taylor asked defendant to take his hands out of his pocket and checked if defendant had any weapons in his pockets. As defendant was searched, Kuhlman moved to the other side of defendant, such that the officers stood in a semicircle in front of defendant, with one officer on each side of defendant and one officer in front of him.

¶ 17        After the search, defendant was informed that Robinson was on her way to the park because she was worried about the things defendant had said. Defendant responded by telling the officers "c'mon man, y'all know what happened in that closet. Y'all know on Fifth Street." When asked to clarify his statement, defendant explained he was in a closet at his aunt's house "fighting off all that s*** that was coming through them things" that were coming through the closet. Defendant added that the same thing happened the day before, with the same things "sending mother f*** lizards, reptiles, and all that s*** through my apartment." When Kuhlman expressed confusion and sought further clarification, defendant responded "never mind then."

¶ 18        Kuhlman asked defendant if he was "feeling down today," and defendant sighed and did not respond. Taylor asked defendant to talk to the officers, and defendant questioned why three officers were surrounding him when he was just walking with his daughter. Defendant denied making any comments about going with his daughter to meet Jesus and asked, "why would I say meet Jesus, Jesus not in heaven." When Kuhlman went to talk to A.V., who had stepped further away from her father and the officers, defendant asked him to stop talking to her because he did not like people talking to her by herself. Kuhlman persisted, and defendant began to clap his hands loudly and say, "big birds, big birds."

¶ 19        Approximately 15 minutes later, Taylor and Barrera, who had stepped away to talk to Robinson, informed defendant that A.V. would be leaving with Robinson. Barrera explained that defendant had made some troubling statements that caused

the officers to fear for A.V.'s safety, so she would leave with her mother and DCFS would be notified so they could investigate. As the officers talked, defendant insisted he had a legal right to have his daughter in his custody for three days per week. Defendant got up from the wall and began to walk in the direction of where Kuhlman stood with A.V. and Robinson.

¶ 20        As he approached, Kuhlman told defendant "I don't need you to come over here and start getting all aggressive." Defendant tried to walk in between Barerra and Kuhlman to talk to his daughter, and they told him he could not do so. Defendant asked if he could walk to his car, and the officers asked if defendant felt like hurting himself and whether he wanted to get a mental health evaluation. Defendant refused the evaluation. After an exchange with the officers about the statements he had made earlier, defendant again insisted he had a legal right to see his daughter and tried to walk past Kuhlman to get to her. Kuhlman pushed defendant away. Defendant swatted Kuhlman's arm away and said, "get your hand off me," before he was tackled by Taylor. As Taylor pushed him, defendant tried to push Taylor's arms away before putting his arms around Taylor's neck, and the two men fell over a concrete-brick retaining wall onto the grassy area it supported. Defendant continued to hold onto Taylor's neck after the fall until he was restrained by the other officers.

¶ 21                              2. *Jury Instructions Conference*

¶ 22        During the jury instruction conference, the State tendered pattern instruction No. 24-25.06, which states "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend [(himself) (another)] against the imminent use of unlawful force." Illinois Pattern Jury Instructions, Criminal, No. 24-25.06 (approved Dec. 8, 2011) (hereinafter IPI Criminal No. 24-25.06). The State explained that it included the instruction as a courtesy to the defense but did not think it applied. The State argued that, under section 7-7 of the Criminal Code,

"A person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful."

See 720 ILCS 5/7-7 (West 2022). Therefore, because neither Taylor nor Kuhlman used excessive force on defendant and they had probable cause for the arrest, a separate instruction that covered what a police officer could do when arresting someone was more applicable.

¶ 23 Defense counsel responded that section 7-7 did not apply because defendant was not under arrest at the time the altercation with the officers took place. The court agreed with defense counsel and found section 7-7 did not apply. The court stated that it had reviewed *Jeffries*, 164 Ill. 2d at 127-28, and went on to indicate as follows:

"And in order to instruct the jury on self-defense, the defendant must establish some evidence of each of the following elements.

No. 1: Force is threatened against a person.

The videos that the State has presented, there was force, I guess, threatened against Mr. Vesey.

No. 2: The person threatened is not the aggressor.

Mr. Vesey was the aggressor. I can see that in the videos.

No. 3: The danger of harm was imminent.

I'm not sure the danger of harm—if this means a danger of harm to Mr. Vesey or if a danger of harm to Ms. Robinson and the minor child.

No. 4: The threatened force was unlawful.

They were police officers acting within the scope of their official duties, so I can't deem that it was unlawful.

[No.] 5: He—it says generally in the statute, but here it would be Mr. Vesey actually and subjectively believed a danger existed which required the use of the force applied.

And [No.] 6: His beliefs were objectively reasonable.

"Those are the elements that the defense has to establish in order to instruct the jury on self-defense; and it says the defense must establish some evidence of each of the elements. There's nothing been established. I see maybe the first element, force that's threatened against a person. But the rest of the other five elements, there is nothing that has been presented and it says that he must establish some evidence of each of the following elements. So I looked at the affirmative defense statute that defense raised, and based on that, I'm not going to allow the self-defense instruction."

¶ 24 Defense counsel argued that defendant was not the aggressor because he took a step forward before Kuhlman pushed him. The court responded that, because defendant had room to walk around the officer, "his action of taking a step forward toward law enforcement is what [the court] deem[ed] as being the aggressor." As to the third element, the court found that, once defendant hit Kuhlman's arm, he committed a felony and at that point Taylor shoved him away, "so there was no imminent harm" to defendant. Defense counsel reminded the court of the low burden to justify the instruction, and the court stated that it understood the burden. Ultimately, the court held that, even with the defendant's additional arguments, it would not instruct the jury on the issue of self-defense.

¶ 25 The jury returned to the courtroom, and the State and defense rested. The defense made a motion for directed verdict, which the trial court denied. The court instructed the jury, and following deliberation, the jury acquitted defendant of the aggravated battery of Kuhlman but found defendant guilty of aggravated battery of Taylor.

¶ 26 B. Posttrial Motion and Sentencing

¶ 27 Defendant filed a posttrial motion in which he argued, in part, that the court erred in denying his request for a self-defense instruction. Defendant noted that the burden for a self-defense instruction was "extremely low at 'some' evidence and that the issue of [s]elf-[d]efense was best left for the jury to decide." The court denied the posttrial motion after finding that defendant had not shown there was some evidence of each element of self-defense. Specifically, the court found that (1) there was force threatened against defendant but that (2) he was the aggressor, (3) the only imminent harm was to A.V. and Robinson and not to defendant, (4) the

force from Taylor was not unlawful, (5) there was no evidence defendant actually and subjectively believed a danger existed that required the use of the force applied, and (6) defendant's beliefs were not objectively reasonable.

¶ 28 At the subsequent sentencing hearing, the State did not present any evidence in aggravation. The defense did not present any evidence in mitigation, but defendant made a statement in allocution expressing his "great respect for police officers." He stated he had a mentality of setting the right example for his daughter and his actions at the park did not set the right example; however, he reacted to protect himself. The court sentenced defendant to 24 months' probation with terms and conditions, including that he undergo a mental health assessment and comply with all recommended treatment. Defendant filed a timely notice of appeal.

¶ 29                           C. Appellate Court Proceedings

¶ 30 On appeal, defendant's appellate counsel moved to withdraw from representing defendant pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that this appeal did not present any issues of arguable merit. 2024 IL App (4th) 230401, ¶ 18. The appellate court denied the motion to withdraw after conducting a full review of the record on appeal. *Id.* The court found it "could not conclude that an argument regarding a possible self-defense instruction would be wholly frivolous," as would be required to grant the motion to withdraw under *Anders*. The court allowed defense counsel the opportunity to file a renewed motion or an opening brief on the self-defense issue. *Id.* Specifically, the court ordered defense counsel to address *Ammons*, 2021 IL App (3d) 150743, ¶ 21, and related cases supporting "the proposition that 'where a defendant is charged with *** the aggravated battery of a police officer during an arrest, a jury instruction on self-defense is required where *** there is evidence that the arresting officer used excessive force.' " Defendant, through new counsel, filed a brief addressing the issue identified by the court. 2024 IL App (4th) 230401, ¶ 19.

¶ 31 With the benefit of full briefing, a majority of the appellate court began its review of the issue by looking at the following sections of the Criminal Code: section 7-5, which addresses a police officer's use of force in making arrests, section 7-5.5, which addresses the prohibited use of force by a police officer, and

section 7-7, which addresses a person's use of force in resisting arrest. (720 ILCS 5/7-5, 7-5.5, 7-7 (West 2022)). The majority concluded that

> "Putting these sections together leads to a two-step inquiry. First, the trial court must consider whether the trial record contains sufficient evidence of excessive force, as governed by section 7-5; if not, section 7-7 prohibits the defendant from raising the affirmative defense that his use of force was justified. If the evidence of excessive force *is* sufficient, then the trial court must still determine whether the trial record contains sufficient evidence of self-defense, as governed by a six-element test established by the supreme court for evaluating claims under section 7-1. Stated another way, an officer's use of excessive force removes the protection of section 7-7, but that does not mean he loses the protection that would be afforded under section 7-1 to any other victim of aggravated battery who has used unlawful force on the defendant." (Emphasis in original.) 2024 IL App (4th) 230401, ¶ 28.

The majority distanced itself "from language in *People v. Ammons*, 2021 IL App (3d) 150743, ¶ 21, and other cases suggesting that 'a jury instruction on self-defense is *required* where *** there is evidence that the arresting officer used excessive force.' (Emphasis added.)" *Id.* ¶ 29.

¶ 32    Turning to the facts of this case, the majority did not fully review the trial court's decision on Taylor's use of force. Instead, the majority, "[d]espite [its] concerns with some other aspects of the trial court's analysis," chose to resolve the appeal on the fifth element of self-defense and found the record did not provide some evidence that defendant actually and subjectively believed a danger existed that required the use of the force he applied. *Id.* ¶ 35. The majority thus concluded that the trial court did not abuse its discretion when it declined to give the self-defense jury instruction. *Id.* ¶ 36. According to the majority, the trial court could have reasonably concluded that defendant's action of wrapping his arm around Taylor's neck was either the result of frustration or an automatic reaction. *Id.* ¶ 37.

¶ 33    The dissenting justice disagreed with the majority's conclusion, noting that, "even if it was within the bounds of reason for the trial court to conclude defendant did not act out of fear, such a conclusion does not govern the determination of whether a self-defense instruction should be given." *Id.* ¶ 45 (Turner, J., dissenting). The appropriate inquiry was whether there was "some evidence defendant was

acting in self-defense, however slight," which would obligate the trial court to give a self-defense instruction. *Id.* The dissenting justice noted that the footage from the body camera

> "indisputably shows Officer Taylor tackled defendant straight on over a concrete retaining wall causing defendant to fall backward. As defendant was falling backward, his unprotected head and body were exposed to slamming into the ground or concrete, and defendant wrapped his arms around the tackling officer. The unrefuted evidence is Officer Taylor made a face-to-face tackle of defendant without alerting defendant in any way of the action he was about to take. From watching the footage, it is obvious a juror could infer defendant acted instinctively out of fear for his safety and actually and subjectively believed a danger existed requiring the use of the force he applied to Officer Taylor." *Id.* ¶ 44.

¶ 34 We allowed defendant's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315(a) (eff. Dec. 7, 2023).

¶ 35                                    II. ANALYSIS

¶ 36 We granted leave to appeal in this case to resolve a conflict in the appellate court between this case (2024 IL App (4th) 230401) and *Ammons*, 2021 IL App (3d) 150743. Specifically, we determine what showing is required for a jury to receive a self-defense instruction in a case involving the use of force against a police officer. As noted above, the majority of the appellate court in this case used a two-step inquiry to determine whether the jury should have been instructed as to self-defense. According to the majority, a trial court must first determine whether the record contains sufficient evidence of excessive force. 2024 IL App (4th) 230401, ¶ 28 (majority opinion). If the evidence is insufficient, the instruction cannot be given. However, if the evidence is sufficient, the trial court then moves to the second part of the inquiry and determines whether the record contains sufficient evidence to satisfy this court's six-element test for giving a self-defense instruction. *Id.*; see *Jeffries*, 164 Ill. 2d at 127-28 (holding that, in order to instruct the jury on self-defense, a defendant must establish some evidence of each element).

¶ 37    In *Ammons*, 2021 IL App (3d) 150743, ¶¶ 1, 5, 14, the defendant was convicted of aggravated battery of a police officer for biting a police officer's finger as several officers tried to place the defendant under arrest. The officers were looking for an individual who fled from a traffic stop when they approached the defendant and asked him for identification. *Id.* ¶¶ 3-4. The defendant put his hands in his pockets and refused to give the officers his identification. *Id.* ¶ 4. The officers instructed the defendant to take his hands out of his pockets, but the defendant refused to do so. *Id.* One of the officers testified that, because of the defendant's irate demeanor and his failure to comply, he wanted the defendant's hands out of his pockets. *Id.* The officers grabbed the defendant's hands and tried to take them out of his pockets. *Id.* The defendant pushed his hands further down his pockets, and as the officers tried to walk him to their squad car, he kicked his legs and twisted his hands to free himself from the officers' grip. *Id.* At that point, the officers believed he was resisting arrest, so they had to hold on to him and arrest him. *Id.* During the ensuing struggle to get the defendant into the car, the defendant bit one officer's finger very hard through his glove. *Id.* ¶ 5. The other officer tased the defendant, and he was handcuffed and placed in the squad car and subsequently charged with aggravated battery for biting the officer's finger. *Id.* ¶¶ 5, 7.

¶ 38    At trial, the defendant raised the affirmative defense of self-defense. *Id.* ¶ 8. The jury was instructed on self-defense after the court found that the defendant presented the "slight evidence" necessary for the instruction to be given. *Id.* The State objected to the instruction and argued that, if the court gave a self-defense instruction, it must also instruct the jury on resisting arrest because the officers used only the amount of force necessary to effect the arrest, not excessive force. *Id.* ¶ 9. The court agreed and, over defense objection, instructed the jury on resisting arrest. *Id.* During deliberations, the jury sent out several questions to the court, including " 'Once you are put under arrest, do you have the right to defend yourself against what you think is unlawful force?' " *Id.* ¶¶ 10-12. Without objection, the court instructed the jury to continue deliberations based on the law and evidence that had already been provided. *Id.* ¶ 11.

¶ 39    On appeal, the defendant argued that the trial court erred when it declined to respond to the jury's question regarding whether a defendant has a right to defend himself against unlawful force. *Id.* ¶ 18. The defendant argued that the trial court's failure to clarify this despite the jury's confusion on this issue rendered the jury

- 13 -

unable to resolve a legal question essential to the determination of guilt or innocence. *Id.* According to the defendant, without clarification, the conflict between the resisting-arrest instructions and the self-defense instructions suggested that a defendant's actions can never be legally justified when an officer uses excessive force. *Id.* Because the defendant had not preserved the issue for appellate review, he asked the court to review it as plain error. *Id.* ¶ 20.

¶ 40        Initially, the Third District found the alleged error could not be reviewed as plain error because the defense agreed with the trial court's responses to the jury. *Id.* The appellate court then found that "there can be no reversible plain error here based upon the jury's inadequate understanding of the defendant's right to defend himself from excessive force because the defendant was not entitled to a jury instruction on that defense." *Id.* ¶ 21. The appellate court recognized that "[a]n arresting officer may use any force reasonably necessary to protect himself or to effectuate an arrest." *Id.* (citing *People v. Wicks*, 355 Ill. App. 3d 760, 764 (2005), and *People v. Agnew-Downs*, 404 Ill. App. 3d 218, 230 (2010)). Further, "[a] person may not use force to resist arrest by a known police officer, even if the arrest is unlawful." *Id.* (citing *Wicks*, 355 Ill. App. 3d at 763). The appellate court found there was an exception to this when an officer used excessive force, which then invoked a person's right to self-defense. *Id.* (citing *People v. Haynes*, 408 Ill. App. 3d 684, 690 (2011), *Wicks*, 355 Ill. App. 3d at 763, and *People v. Williams*, 267 Ill. App. 3d 82, 88 (1994)). Therefore, the appellate court concluded that, "where a defendant is charged with resisting arrest or with the aggravated battery of a police officer during an arrest, a jury instruction on self-defense is *required* where the defendant is unaware of the police officer's identity or there is evidence that the arresting officer used excessive force." (Emphasis added.) *Id.*

¶ 41        Defendant argues that the approach taken in *Ammons* is superior to that taken in this case because it recognizes that, by showing slight evidence of police use of excessive force, a defendant necessarily satisfies this court's test for the applicability of a self-defense instruction. According to defendant, this approach also "protects the constitutional right to a trial by jury, as the jury is ultimately afforded the opportunity to decide whether the defendant's use of force was justified." The State argues that defendant misunderstands the appellate court's decision in this case because the Fourth District applied the test this court uses. See *Jeffries*, 164 Ill. 2d at 127-28. The State thus sees no conflict but argues that

- 14 -

*Ammons* is incorrect and the case it relied on in reaching its conclusion, *Williams*, 267 Ill. App. 3d at 82, should be overruled.

¶ 42    In *Jeffries*, 164 Ill. 2d at 127, this court explained the burdens of proof each party bore when a defendant raised an affirmative defense of self-defense. In so doing, the court explained that, after the State established the elements of the charged offense, the trier of fact could consider the issue of self-defense only if the defendant established some evidence of each of the following elements:

> "(1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) he actually and subjectively believed a danger existed which required the use of the force applied; and (6) his beliefs were objectively reasonable." *Id.* at 127-28.

We note that other decisions from this court have described the elements identified in *Jeffries* slightly differently, but the elements have remained the same. See, *e.g.*, *People v. Gray*, 2017 IL 120958, ¶ 50; *People v. Lee*, 213 Ill. 2d 218, 225 (2004). Our review of *Ammons* and the Fourth District's decision in this case reveals that in both instances the appellate court strayed from our established test as set forth in *Jeffries*.

¶ 43    The six-element test in *Jeffries* is in line with sections 7-1(a) and 7-4 of the Criminal Code (720 ILCS 5/7-1(a), 7-4 (West 2022)). Section 7-1(a) provides that

> "[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." *Id.* § 7-1(a).

Section 7-4 limits the justification allowed under section 7-1(a) if the person claiming self-defense is the initial aggressor or other statutory factors apply. *Id.* § 7-4.

¶ 44    The disagreement within the appellate court on how to apply the *Jeffries* test in cases in which a defendant uses force against a police officer may stem from several sections of the Criminal Code involving the use of force by and against police officers. Section 7-5 allows a police officer to use any force he reasonably believes, based on the totality of the circumstances, to be necessary to effect an arrest or defend himself or another from bodily harm while making the arrest. *Id.* § 7-5. Therefore, a police officer's use of force can be unlawful (1) under section 7-5 if the officer uses more force than reasonably necessary to effectuate an arrest or protect himself or others or (2) under section 7-5.5 if the officer uses force that is prohibited and no exception applies (see *id.* § 7-5.5 (prohibiting a police officer's use of different kinds of force unless deadly force is justified or there is a risk of death or great bodily harm to the officer or another person)).

¶ 45    Section 7-7 then limits a person's legal right to respond to a police officer's use of force and states that "[a] person is not authorized to use force to resist an arrest which he knows is being made *** by a peace officer ***, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." *Id.* § 7-7. Of course, a person cannot knowingly resist an arrest he does not know is occurring, and section 7-7 may not be applicable in all situations in which a person uses force against an officer. Reading these sections together, a person who uses force against a police officer is not entitled to a self-defense instruction unless he can show some evidence of the elements of self-defense, which includes a showing of some evidence that the officer threatened unlawful force. For an officer's force to be unlawful, it would have to be excessive or otherwise prohibited by law. See *id.* §§ 7-5, 7-5.5.

¶ 46    Therefore, while there are additional considerations when a defendant's use of force is against a police officer, the core test remains the same as when a defendant seeks a self-defense instruction for the use of force against a person who is not a police officer. In either case, to instruct the jury on self-defense, the defendant must first establish that the record contains some evidence of each of the elements listed in *Jeffries*.

¶ 47    In reviewing the fourth element, that the threatened force was unlawful, if there is some evidence from which a jury could conclude the police officer used excessive—and therefore unlawful—force, the self-defense instruction should be given if there is some evidence of the other elements. In other words, in the context

- 16 -

of an affirmative defense of self-defense, the question of whether the officer used more force than was necessary for an arrest is a question of fact that should ultimately be determined by the jury. To ensure the jury is properly equipped to answer this question, the jury should be instructed on the force an officer is authorized to use and that a person may not ordinarily resist an arrest, so that the jury can determine whether an officer threatened unlawful force. See, *e.g.*, IPI Criminal, No. 24-25.12 (used to instruct a jury on a "Peace Officer's Use Of Force In Making Arrest"); IPI Criminal, No. 24-25.20 (used to instruct a jury on a "Private Person's Use Of Force In Resisting Arrest").

¶ 48      The first step of the Fourth District's two-step inquiry in this case overlooks the evidentiary standard applicable when determining whether the defendant is entitled to receive a self-defense jury instruction. 2024 IL App (4th) 230401, ¶ 28. In this matter the appellate court failed to consider whether there was *some evidence*, however slight, of excessive force. Instead, the court used a higher standard to determine whether a police officer used excessive force. See *People v. Washington*, 2012 IL 110283, ¶ 43 (agreeing "that it is well settled that a defendant is only entitled to a jury instruction on an affirmative defense if there is some evidence, however slight, in the record to support that defense"). This approach also invades the province of the jury because it allows the trial court to weigh the evidence and make a final decision on whether there was excessive force, in order to determine if there was some evidence of unlawful force. This is improper because, as we have cautioned, "[i]t is not the province of the trial court to weigh the evidence when deciding whether a jury instruction is justified." *People v. McDonald*, 2016 IL 118882, ¶ 25.

¶ 49      We similarly reject the holding in *Ammons*, 2021 IL App (3d) 150743, ¶ 21. There, the court held that, "where a defendant is charged with resisting arrest or with the aggravated battery of a police officer during an arrest, a jury instruction on self-defense is *required* where the defendant is unaware of the police officer's identity or there is evidence that the arresting officer used excessive force." (Emphasis added.) *Id.* This approach fails to follow *Jeffries* because it does not require some evidence of all the elements of self-defense before a self-defense instruction can be given. This approach also fails because it allows the trial court to decide whether a police officer used excessive force, instead of leaving that

- 17 -

determination to the jury.

¶ 50                       A. Application of the *Jeffries* Test to This Case

¶ 51                               1. *Standard of Review*

¶ 52  Having settled the conflict in the appellate court on the applicable test, we now review the record in this case to determine whether the trial court should have granted defendant's request to have the jury instructed on self-defense. When the trial court, after reviewing all the evidence, determines that there is insufficient evidence to justify the giving of a jury instruction, the proper standard of review of that decision is abuse of discretion. *McDonald*, 2016 IL 118882, ¶ 42. An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it. *People v. Rivera*, 2013 IL 112467, ¶ 37. It is an abuse of discretion for the court to refuse to give an instruction that is supported by the evidence and accurately states the legal principles applicable to the case. *People v. Tompkins*, 2023 IL 127805, ¶ 42.

¶ 53  Prior to this court's holding in *McDonald*, there were several cases that appeared to review a trial court's decision to give or refuse a requested jury instruction on an affirmative defense *de novo*. In *People v. Everette*, 141 Ill. 2d 147, 157 (1990), this court stated "[i]t is a matter of law whether the defendant has met the evidentiary minimum entitling him to instructions on an affirmative defense." Matters of law are reviewed under a *de novo* standard of review. See *People v. Rizzo*, 2016 IL 118599, ¶ 23. In *Washington*, this court stated, "[t]he question of whether sufficient evidence exists in the record to support the giving of a jury instruction is a question of law subject to *de novo* review." *Washington*, 2012 IL 110283, ¶ 19 (citing *Everette*, 141 Ill. 2d at 157).[1]

---

[1] The special concurrence quotes *Carter v. Winter*, 32 Ill. 2d 275, 281 (1965), for the proposition that "[w]hen the circuit court decides whether the evidence warrants submission of the case to the jury, it decides 'a question of law.' " *Infra* ¶ 99. Reliance on *Carter* here is misplaced because the issue in *Carter* was "the propriety of the ruling of the trial court's denial of defendants' motion for a directed verdict." *Carter*, 32 Ill. 2d at 281. In that context, the court noted that a "motion to direct a verdict presents a question of law." *Id.*

¶ 54    In *McDonald*, this court discussed and distinguished both *Everette* and *Washington*. *McDonald*, 2016 IL 118882, ¶¶ 40-41. This court found that, in each of those cases, the court

> "did not apply a *de novo* standard of review to the question of whether the trial court erred in finding sufficient evidence to justify giving an instruction. In each case, the trial court found sufficient evidence to warrant the instruction but found that the instruction could not be given as a matter of law." *Id.* ¶ 39.

This court "acknowledge[d] that the choice of wording in explaining the *de novo* standard in *Washington* was less than clear, [and] we emphasize[d] that this court did not utilize a *de novo* standard to review the trial court's decision to refuse to give a second degree murder instruction." *Id.* ¶ 41.

¶ 55    Since our decision in *McDonald*, this court has reiterated that the abuse of discretion standard of review applies to questions of whether the trial court erred in refusing to give a jury instruction. See, *e.g.*, *People v. Sloan*, 2024 IL 129676, ¶ 15 ("We review a trial court's decision denying a jury instruction request for an abuse of discretion."); *People v. Nere*, 2018 IL 122566, ¶ 29 ("In general, whether the trial court erred in refusing a particular jury instruction is reviewed under an abuse of discretion standard."); *Bailey v. Mercy Hospital & Medical Center*, 2021 IL 126748, ¶ 42 ("Thus, we generally review a trial court's decision to grant or deny a jury instruction for an abuse of discretion."). We have used a *de novo* standard of review in cases where the issue before the court presents a question of law. See *People v. Woods*, 2023 IL 127794, ¶ 55 ("While we generally review for an abuse of discretion a trial court's decision to give a particular instruction [citation], we review *de novo* the question of whether the jury instructions accurately conveyed the applicable law to the jury [citation].").

¶ 56    The special concurrence disagrees with *McDonald* and contends that the use of an abuse of discretion standard conflicts with section 3-2(b) of the Criminal Code (720 ILCS 5/3-2(b) (West 2022)). *Infra* ¶¶ 91-93. Section 3-2 of the Criminal Code states,

> "(a) 'Affirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon.

(b) If the issue involved in an affirmative defense, other than insanity, is raised then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense. If the affirmative defense of insanity is raised, the defendant bears the burden of proving by clear and convincing evidence his insanity at the time of the offense." 720 ILCS 5/3-2 (West 2022).

The special concurrence asserts that "[s]ection 3-2(b) establishes the circuit court's nondiscretionary duty to instruct the jury on the affirmative defense whenever the record includes ' "some evidence" ' supporting the defense." *Infra* ¶ 94. The special concurrence notes that *McDonald* did not address the requirements of section 3-2 and, relying on the dissent in *McDonald*, argues that there is no reason to use an abuse of discretion standard of review if the trial court is not allowed to make credibility determinations as to the evidence when deciding if a jury instruction is justified. *Infra* ¶ 95 (citing *McDonald*, 2016 IL 118882, ¶¶ 78-79 (Burke, J., dissenting, joined by Freeman and Kilbride, JJ.)).

¶ 57       However, section 3-2 does not prescribe which standard of review applies. It addresses the State's burden of proof when an affirmative defense is raised. We agree that section 3-2(b) requires the circuit court to give a jury instruction on an affirmative defense when the record includes some evidence supporting the defense. However, the circuit court does not simply accept a defendant's assertion that the evidence establishes an affirmative defense. The circuit court must review the evidence presented by the State or the defense and determine whether that evidence is "some evidence" of an affirmative defense. The circuit court's determination that such evidence exists in the record is a discretionary act. For the affirmative defense of self-defense, the court determines whether there is some evidence that could establish each element of the six-element test in *Jeffries* when the case is submitted to the jury. We reiterate that, in making this review and determination, the circuit court does not weigh the evidence. *People v. Jones*, 175 Ill. 2d 126, 132 (1997). Therefore, *McDonald*'s use of an abuse of discretion standard of review does not conflict with section 3-2(b).

¶ 58       The special concurrence refers to *McDonald*'s holding that the proper standard of review is abuse of discretion as a misstatement. *Infra* ¶ 110. The holding is not a misstatement; it is the well-reasoned decision of a majority of this court after the

- 20 -

question was fully briefed by the parties. Before *McDonald*, cases such as *Washington* and *Everette* appeared to use a *de novo* standard of review, while cases such as *People v. Hari*, 218 Ill. 2d 275 (2006), and *Jones*, 175 Ill. 2d at 131-32, used an abuse of discretion standard of review. *McDonald* did not create new law; it offered much-needed clarity to the question of which standard of review was applicable. As we have done before, we continue to adhere to *McDonald* under the doctrine of *stare decisis*, which expresses the policy of the courts to stand by precedents and not to disturb settled points unless there is special justification. *People v. Clemons*, 2012 IL 107821, ¶ 9. This doctrine ensures that "a question once deliberately examined and decided should be closed to further argument, ensuring that the law will develop in a 'principled, intelligent fashion,' immune from erratic changes." *Id.* (quoting *People v. Colon*, 225 Ill. 2d 125, 146 (2007)). We see no special justification to depart from our established standard of review here.

¶ 59    The special concurrence's reliance on *Hari*, 218 Ill. 2d at 296-97, is perplexing. *Infra* ¶ 99. In *Hari*, the defendant was charged with first degree murder and attempted first degree murder for shooting his wife and her lover. *Hari*, 218 Ill. 2d at 278, 280. At trial, the key issue was whether the defendant was relieved of culpability due to his alleged involuntary intoxication from prescription medication. *Id.* at 278. During the jury instructions conference, defense counsel tendered jury instructions for an affirmative defense of involuntary intoxication. *Id.* at 289. The court found that the issue of intoxication was raised by the defendant's evidence and expert testimony. *Id.* However, the court denied the proffered involuntary intoxication instruction after finding that the defendant had to show his intoxication was the result of " 'trick, artifice, or force.' " *Id.* The defendant was found guilty. *Id.* On appeal before this court, this court "interpret[ed] the involuntary intoxication statute (720 ILCS 5/6-3 (West 2002))" and reviewed "the evidence adduced at trial to determine if defendant was entitled to an involuntary intoxication jury instruction." *Id.* at 278.

¶ 60    After reviewing the statute, this court concluded that the defendant's alleged drugged condition was involuntarily produced within the plain meaning of the involuntary intoxication affirmative defense statute. *Id.* at 292. The court further held that the record showed the defendant had presented some evidence that his drugged condition was involuntary, which justified the giving of the instruction on

his affirmative defense of involuntary intoxication. *Id.* at 295. Therefore, this court held that the trial court erred in failing to instruct the jury on involuntary intoxication. *Id.* at 296. In conducting this review, this court used the abuse of discretion standard of review. The court indicated it did so when it stated that "[t]his court has held that where there is some evidence to support an affirmative defense instruction, the trial court's refusal to instruct the jury constitutes an abuse of discretion even if the evidence is conflicting." *Id.* This statement appears in the paragraph immediately preceding the section the special concurrence quotes from *Hari*. See *infra* ¶ 99 (citing *Hari*, 218 Ill. 2d at 297).

¶ 61        The paragraph the special concurrence quotes was the *Hari* court's response to the State's argument that any error in the court's failure to give the involuntary intoxication instruction was harmless. See *Hari*, 218 Ill. 2d at 297. The quoted language has nothing to do with the standard of review. We do not quibble with the quoted language as far as the harmless error analysis is concerned. Indeed, we include similar language in our harmless error analysis in this case. See *infra* ¶¶ 83-85. We note that *McDonald* also discussed *Hari* at length in rejecting the defendant's claim that *Hari* applied a *de novo* standard of review to the trial court's failure to give the jury an instruction on the defendant's affirmative defense. *McDonald*, 2016 IL 118882, ¶¶ 35-37 (majority opinion).

¶ 62        Despite relying on *Hari* for part of its argument, the special concurrence also argues that *Hari* serves as an example of why *McDonald* should be overruled. *Infra* ¶ 115-16. Specifically, the special concurrence finds the following statement from *Hari* confusing—" 'where there is some evidence to support an affirmative defense instruction, the trial court's refusal to instruct the jury constitutes an abuse of discretion.' " *Infra* ¶ 116 (quoting *Hari*, 218 Ill. 2d at 296). The special concurrence argues that, if the court must give an instruction when there is evidence in the record to support it, the court has no discretion to refuse the instruction. *Id.* But as we have discussed above, the circuit court's discretion is applied to the court's determination of whether the record contains some evidence of the affirmative defense. The court's discretion is not in determining whether to give the instruction if the record contains that evidence.

¶ 63        Finally, the special concurrence also takes issue with the use of the words "finding" and "sufficient" when discussing what must be shown in order for a self-

defense instruction to be given. *Infra* ¶¶ 105-07. The special concurrence's arguments as to the use of these terms are equally confounding. For instance, even by the definition the special concurrence presents for "sufficient evidence," for a defendant to receive an instruction on self-defense, he must show the record contains some "nonzero amount of evidence." *Infra* ¶ 105. When a defendant makes this showing, that slight evidence can be described as sufficient, that is, adequate to justify the instruction. The use of the word "sufficient" in this opinion and in *McDonald* is legally and linguistically correct, as is the use of the word "finding" to refer to the determination that the record contains some evidence. See, *e.g.*, *Everette*, 141 Ill. 2d at 156 (acknowledging that "[t]he Supreme Court recently observed that, '[a]s a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence *sufficient* for a reasonable jury to find in his favor.' " (Emphasis added.) (quoting *Mathews v. United States*, 485 U.S. 58, 64 (1988))); *Hari*, 218 Ill. 2d at 298-99 (where this court stated we "*find* that defendant should have received an instruction as to his affirmative defense of involuntary intoxication" because the record showed some evidence of involuntary intoxication (emphasis added)).

¶ 64
### 2. The Circuit Court Abused Its Discretion When It Refused to Give the Self-Defense Instruction

¶ 65     Self-defense is an affirmative defense, and once a defendant properly raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense. *Lee*, 213 Ill. 2d at 224. In deciding whether to give a self-defense instruction, the court must determine whether there is some evidence, even slight evidence, to support the theory of self-defense without weighing the evidence. See *Everette*, 141 Ill. 2d at 156 (finding "[i]t has long been the position of this court that a defendant is entitled to instructions on those defenses which the evidence supports" even when such evidence is slight). Where self-defense is not supported by the evidence, a self-defense instruction may properly be refused. *Id.* at 157.

¶ 66
### 3. *The First and Fourth Elements*

¶ 67    Applying the *Jeffries* test to this case, we find there was some evidence of self-defense such that the trial court abused its discretion by not giving the self-defense instruction. We will review the first and fourth elements together because they are interconnected. Initially, we agree with the trial court's finding that there was some evidence that there was force threatened by Taylor against defendant. We further find that the body camera footage provided some evidence that the force Taylor threatened was unlawful as he, without warning, tackled defendant into the concrete-brick retaining wall.

¶ 68    Under section 7-5(a), a police officer is justified in the use of any force that he reasonably believes, based on the totality of the circumstances, to be necessary to effect the arrest or protect himself or others. 720 ILCS 5/7-5(a) (West 2022). When an officer uses more force than is necessary to effectuate the arrest or protect himself, he necessarily uses excessive force. At trial, Taylor testified that he was trained to use less hands-on methods to effectuate an arrest but chose not to use them after considering the number of officers at the scene, how close Robinson and A.V. were, and the surrounding area. In a matter of seconds after defendant swatted Kuhlman's hand away and stepped back, Taylor tackled him with no warning or indication that he was trying to place defendant under arrest. Defendant had cooperated with the officers when they asked to search him at the beginning of their interaction, and when he was told he could not walk through the officers, he only verbally contested the instruction. Thus, Taylor made no attempt to make a peaceful arrest, despite the fact that defendant had not shown such an arrest was unlikely.

¶ 69    The State argues that the record provides no evidence that Taylor's belief—that the level of force he used was necessary—was unreasonable. But this is not the standard for determining whether a self-defense instruction should be given. Defendant was only required to show some evidence, however slight, that Taylor used unreasonably excessive—and thus unlawful—force in attempting to arrest him. Defendant met this standard by relying on the footage showing Taylor tackling him toward the concrete-brick retaining wall. Prior to this, defendant did not initiate any physical contact with the officers except when they told him they were terminating his court-ordered visitation with his daughter. At that point, defendant became agitated and tried to get through the officers who were standing in front of his daughter. However, instead of pushing through the officers, he repeatedly asked the officers to excuse him. Defendant made minimal physical contact with

Kuhlman after Kuhlman pushed him. Based on the circumstances, there is *some* evidence that the level of force Taylor used in reaction to defendant swatting Kuhlman's hand away was unreasonably excessive. The ultimate question of whether Taylor used unlawful force such that defendant was justified in putting his arms around Taylor's neck should have been decided by a jury properly instructed on the issue of self-defense.

¶ 70 The State also argues that the force Taylor used was less than that used by a police officer in *People v. Jones*, 2015 IL App (2d) 130387, ¶ 7, who tried to arrest a defendant by grabbing his arm. The defendant started pushing and pulling away, so the officer "took him to the ground." *Id.* The opinion in *Jones* does not provide a description of what actions the officer took or the level of force he used to take the defendant to the ground. The defendant was subsequently convicted of aggravated battery to a peace officer and obstructing a peace officer. *Id.* ¶¶ 1, 9. On appeal, the defendant argued that the trial court should have *sua sponte* instructed the jury on self-defense as a defense to aggravated battery. *Id.* ¶ 20. The appellate court found that the defendant failed to explain how his arrest could have been accomplished with a lesser degree of force where he pulled away from the officer after the officer grabbed his arm while attempting to arrest him. *Id.* ¶ 24. It was after the defendant continued to pull away from him that the officer took him to the ground. *Id.*

¶ 71 The appellate court found "the evidence overwhelmingly showed that defendant was belligerent and combative from the beginning of the encounter. When it was clear that [the] defendant would not cooperate, [the officer] merely grabbed his arm and tackled him, which was necessary to effect the arrest." *Id.* ¶ 26. The court held that, if a self-defense instruction were required under those facts, it "would mean that in virtually every resisting-arrest case the trial court would have to instruct the jury on self-defense, inviting it to speculate that the officer used excessive force. This in turn would all but eviscerate the rule that one may not resist an unlawful arrest." *Id.*

¶ 72 *Jones* is distinguishable because the record there did not show some evidence that the officer used excessive force because he grabbed the arm of a "belligerent and combative" defendant and tackled him to effect an arrest. *Id.* The record here does not show that defendant resisted an arrest, thus prompting an escalation in

force from Taylor to accomplish the arrest. It is also important to note that it is not Taylor's choice to use a tackling move that is dispositive in this case, just as the tackle in *Jones* was not dispositive. It is the level of force that Taylor used under the circumstances of this case and the reasonableness of his belief that that force was necessary for an arrest that must be reviewed. A trial court considering whether the instruction should be given must review the specific facts before it and determine whether there is some evidence supporting each element.

¶ 73    We disagree with the *Jones* court that if a jury was instructed on self-defense in a resisting-arrest case the jury would be invited "to speculate that the officer used excessive force" and that it would "all but eviscerate the rule that one may not resist an unlawful arrest." *Id.* Where the evidence justifies a self-defense instruction, a properly instructed jury would not need to speculate on whether there was a use of excessive force. The jury would consider the facts and determine whether the defendant used force to resist an arrest he knew was taking place, and whether the officer used only the level of force necessary to effectuate the arrest.

¶ 74                              4. *The Second Element*

¶ 75    Defendant has also satisfied the second element of the *Jeffries* test. Until he approached the officers as they separated him from A.V. and Robinson, defendant had obeyed the officers' directions, including agreeing to being patted down. When he approached the officer, defendant did not push through them; he kept repeating "excuse me, excuse me" and informing the officers that he had a legal right to be with his daughter. Although he was agitated when he was informed his daughter would be leaving with her mother, there is some evidence defendant did not use any aggressive words or take any aggressive actions toward the officers. Taylor testified defendant's reaction was understandable. Defendant did not make any physical contact with the officers until Kuhlman pushed him in the chest and defendant pushed Kuhlman's arm away. Under these circumstances, the record contains some evidence that defendant was not the aggressor.

## ¶ 76                      5. *The Third Element*

¶ 77      Third, there was some evidence that the danger of harm from Taylor was imminent before defendant resorted to using force. Defendant did not wrap his arms around Taylor's neck until after Taylor unexpectedly tackled him and pushed him backward toward a concrete wall.

## ¶ 78                   6. *The Fifth and Sixth Elements*

¶ 79      Finally, as to the fifth and sixth elements, there was some evidence that defendant actually and subjectively believed a danger existed that required the use of the force and that his beliefs were objectively reasonable. Defendant did not testify as to whether he actually and subjectively believed a danger existed. However, the body camera footage does provide some evidence of this element because it showed defendant's reaction to Taylor's use of force and the concrete wall behind defendant as he fell. There is some evidence that defendant believed he needed to brace his fall to avoid getting injured as he fell backward headfirst. As the dissenting justice in the appellate court noted, "a juror could infer defendant acted instinctively out of fear for his safety and actually and subjectively believed a danger existed requiring the use of the force he applied to Officer Taylor." 2024 IL App (4th) 230401, ¶ 44 (Turner, J., dissenting). A jury could have found that defendant's wrapping his arms around Taylor's neck was done out of a fear of falling backward into a concrete wall, which was objectively reasonable.

¶ 80      Because the standard of review applicable here is an abuse of discretion, the majority of the appellate court found "that the trial court could have reasonably concluded that defendant's action of wrapping his arm around Taylor's neck was either the result of frustration [citation] or 'an automatic reaction' [citation]." *Id.* ¶ 37 (majority opinion). The court concluded that the trial court did not abuse its discretion in finding the "record reflected something other than actual fear on defendant's part" and therefore the self-defense instruction was not applicable. *Id.* The State makes a similar argument and adds that, to the extent defendant's grip around Taylor's neck was justified as he fell, it ceased to be so after the two men fell, yet defendant continued holding on.

- 27 -

¶ 81        We agree with the dissent that this was the wrong inquiry. See *id.* ¶ 45 (Turner, J., dissenting) ("However, even if it was within the bounds of reason for the trial court to conclude defendant did not act out of fear, such a conclusion does not govern the determination of whether a self-defense instruction should be given."). The correct inquiry was whether the record showed *some* evidence defendant acted out of fear. We find it did. Deciding whether the record showed some evidence that defendant could have acted with a different motivation is ultimately a question for the trier of fact. Similarly, the State is free to argue that any justification defendant had ended after the two men fell. The State did not separate the two actions— defendant's initial grabbing of Taylor's neck and his continued grasp after the fall—in the charging instrument. Therefore, at a minimum, the record evidence supports the giving of the instruction for the first action. The State's argument as to the second action may be more applicable after the jury is instructed as to self-defense because the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *Lee*, 213 Ill. 2d at 224.

¶ 82                                    B. Harmless Error

¶ 83        During the jury instruction conference, defendant argued that there was sufficient evidence to instruct the jury as to self-defense. In his posttrial motion, defendant contended the court erred by failing to instruct the jury as to self-defense. Therefore, any error in the court's failure to give the instruction was preserved for appellate review. See *People v. Herron*, 215 Ill. 2d 167, 175 (2005) ("Generally, a defendant forfeits review of any putative jury instruction error if the defendant does not object to the instruction or offer an alternative instruction at trial and does not raise the instruction issue in a posttrial motion."). The State argues that, even if we find the trial court abused its discretion when it failed to instruct the jury on self-defense, the error was harmless because there is no reasonable doubt that the State would have disproved at least one of the elements of self-defense. Specifically, the State argues the jury would not have concluded that defendant reasonably believed self-defense required his continued grip of Taylor's neck after the two men fell.

¶ 84        In a harmless error analysis, which applies where the defendant has preserved the error he claims for appellate review, the State bears the burden of persuasion with respect to prejudice. *People v. Thurow*, 203 Ill. 2d 352, 363 (2003). Generally,

- 28 -

criminal defendants have a due process right to a trial that "comport[s] with prevailing notions of fundamental fairness," which includes a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984). If the record provides sufficient evidence to instruct a jury on self-defense, the defendant is entitled to the instruction. *Everette*, 141 Ill. 2d at 156 ("It has long been the position of this court that a defendant is entitled to instructions on those defenses which the evidence supports. This is so even in instances where the evidence is 'slight' [citations]."). The failure to instruct the jury on this affirmative defense where the evidence supports it thus affects the defendant's constitutional right to a fair trial. Therefore, because this jury instruction error affects a defendant's constitutional right to due process, the state must prove the harmlessness of the error beyond a reasonable doubt. See U.S. Const., amend. XIV; *Chapman v. California*, 386 U.S. 18, 24 (1967) (holding that, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"). The error is harmless if the result of the trial would not have been different if the proper instruction had been given. *People v. Ward*, 187 Ill. 2d 249, 265 (1999).

¶ 85        Here, the jury was instructed that, to sustain the charge of aggravated battery as to Taylor, the jury had to find that defendant made physical contact of an insulting or provoking nature with Taylor. The jury was not asked to consider defendant's initial contact with Taylor separately from his continued contact after the fall. The jury may have found defendant's initial reaction to Taylor's force was reasonable and that the continued grip after the fall, which lasted a few seconds, was part of the same sequence of events as to not be distinguishable. The jury could also have concluded that defendant reasonably continued to fear more force from Taylor after they fell based on his prior use of force. Additionally, the jury's acquittal of defendant on the charge of aggravated battery against Kuhlman suggests the jury may have found Taylor's reaction to defendant's contact with Kuhlman was unwarranted and his use of force excessive. We cannot say, under the circumstances of this case, that the State has met its burden of showing, beyond a reasonable doubt, that the verdict would have been the same had the jury been properly instructed.

- 29 -

¶ 86                           III. CONCLUSION

¶ 87        For the foregoing reasons, we hold that the self-defense elements test as set forth in *Jeffries*, 164 Ill. 2d at 127-28, applies to determine whether a self-defense instruction should be given even when there is an allegation of police use of excessive force. Based on the record, we find defendant was entitled to a self-defense instruction. There was some evidence in the record, however slight, of all the elements of self-defense, and the trial court abused its discretion when it refused to give the instruction. Without the self-defense instruction, "the jury lacked the necessary tools to analyze the evidence fully and to reach a verdict based on those facts." *Jones*, 175 Ill. 2d at 134. "The resulting denial of due process requires that defendant be granted a new trial." *Id.* As a result, we reverse the judgment against defendant and remand his case for further proceedings.

¶ 88        Judgments reversed.

¶ 89        Cause remanded.

¶ 90        CHIEF JUSTICE NEVILLE, specially concurring:

¶ 91        I agree with the majority that Vesey presented some evidence on each of the elements of self-defense and therefore the circuit court erred when it refused to instruct the jury on self-defense. I also agree with the majority that the error requires reversal and remand for further proceedings. I disagree only with the assertion, based on *People v. McDonald*, 2016 IL 118882, ¶ 42, that we review the instruction issue for abuse of discretion. See *supra* ¶ 52. As this court correctly held in *People v. Everette*, 141 Ill. 2d 147, 157 (1990), "[i]t is a matter of law whether the defendant has met the evidentiary minimum entitling him to instructions on an affirmative defense."

¶ 92              I. Affirmative Defenses Under the Criminal Code

¶ 93        The standard of review in the majority opinion conflicts with the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/1-1 *et seq.* (West 2022)). Section 3-2 of the Criminal Code defines "affirmative defense" and provides:

"If the issue involved in an affirmative defense *** is raised then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense." *Id.* § 3-2(b).

¶ 94    Section 3-2(b) establishes the circuit court's nondiscretionary duty to instruct the jury on the affirmative defense whenever the record includes " 'some evidence' " supporting the defense. *People v. Hari*, 218 Ill. 2d 275, 295 (2006) (quoting 720 ILCS 5/3-2(a) (West 2002)).

¶ 95    The majority in *McDonald* did not address the requirements of section 3-2. The *McDonald* dissenters cogently argued:

"If *** [i]t is not the province of the trial court to weigh the evidence when deciding whether a jury instruction is justified [citation], what justification is there for the majority's holding that abuse of discretion is the proper standard of review? ***

When reviewing a trial court's denial of a proffered [affirmative defense] instruction, the question is the correctness of the trial court's determination that defendant has not presented any evidence that would entitle him to the instruction. *** Because the trial court does not assess the credibility of the evidence, there is no reason for a reviewing court to give deference to the trial court's determination. Thus, a *de novo* standard governs the review of the trial court's determination." (Internal quotation marks omitted.) *McDonald*, 2016 IL 118882, ¶ 78-79 (Burke, J., dissenting, joined by Freeman and Kilbride, JJ.).

¶ 96    When a defendant raises an affirmative defense and the record includes some evidence on each element of the affirmative defense, he "is entitled to an instruction on his theory of the case," and "the issue of whether a defendant should be relieved of criminal liability by reason of his affirmative defense must be determined by the jury with proper instruction as to the applicable law." *People v. Jones*, 175 Ill. 2d 126, 131-32 (1997); see 720 ILCS 5/3-2(a) (West 2022). The circuit court must give the instruction as a matter of "fundamental fairness," as the court's refusal to give the instruction "results in a denial of defendant's due process." *Hari*, 218 Ill. 2d at 296-97. The circuit court does not have discretion to deny the instruction when slight evidence supports it. *Everette*, 141 Ill. 2d at 157.

¶ 97                            II. The Circuit Court's Role

¶ 98        In determining whether the defendant has presented some evidence on each
element of the affirmative defense, " 'it is not the court's role to weigh the
evidence.' " *Jones*, 175 Ill. 2d at 132 (quoting *People v. Jones*, 276 Ill. App. 3d
1006, 1012 (1995) (Cook, P.J., dissenting)). The circuit court must decide only
whether the evidence presented, however slight, raises a question for the jury to
decide: "whether a defendant should be relieved of criminal liability by reason of
his affirmative defense." *Id.*; *Hari*, 218 Ill. 2d at 296-97; 720 ILCS 5/3-2 (West
2022).

¶ 99        When the circuit court decides whether the evidence warrants submission of the
case to the jury, it decides "a question of law." *Carter v. Winter*, 32 Ill. 2d 275, 281
(1965). "The question of whether sufficient evidence exists in the record to support
the giving of a jury instruction is a question of law subject to *de novo* review."
*People v. Washington*, 2012 IL 110283, ¶ 19 (citing *Everette*, 141 Ill. 2d at 157);
see *People v. Lockett*, 82 Ill. 2d 546, 552-53 (1980). As this court said in *Hari*:

>     "Because the defense evidence raised the affirmative defense, the State held
> the burden of proving the defendant guilty beyond a reasonable doubt as to that
> issue together with all other elements of the offense. 720 ILCS 5/3-2 (West
> 2002). Yet, no instruction was given that addressed the defense evidence. ***
> This omission 'removed from the jury's consideration a disputed issue essential
> to the determination of defendant's guilt or innocence.' [Citation.] Ultimately,
> it was for the jury to weigh the evidence in determining whether the defendant
> [proved his affirmative defense]. The jury therefore lacked the necessary tools
> to analyze the evidence fully and to reach a verdict based on those facts.
> [Citation.] Such an error is a denial of due process and requires that defendant
> be granted a new trial." *Hari*, 218 Ill. 2d at 297.

¶ 100                           III. The Majority's Error

¶ 101       The majority's error stems from its framing of the issue: " 'whether the trial
court erred in finding sufficient evidence to justify giving an instruction.' " *Supra*
¶ 54 (quoting *McDonald*, 2016 IL 118882, ¶ 39 (majority opinion)).

¶ 102    There are two problems with this framing of the issue.

¶ 103    First, the term "finding" presupposes that the trial court is deciding which of two propositions is correct. See Black's Law Dictionary 632 (6th ed. 1990) (defining "finding of fact" as "[a] determination of a fact by the court, averred by one party and denied by the other, and founded on evidence in case"). And, even if the determination of whether "some" evidence exists is a finding of fact, we recently explained that "factfinding with respect to a party's burden of proof *** is not a discretionary act." *People v. Morgan*, 2025 IL 130626, ¶ 30.

¶ 104    Second, the term "sufficient" presupposes that there is a burden of proof. See Black's Law Dictionary 1433 (6th ed. 1990) (defining "sufficient evidence" as "[a]dequate evidence" or "such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded"); see *People v. Mikolaitis*, 2024 IL 130693, ¶ 20 ("the State must meet its burden and present sufficient evidence").

¶ 105    Section 3-2 requires neither a "finding" nor "sufficient" evidence—it requires only that the record include "some" evidence. 720 ILCS 5/3-2(a) (West 2022) (to raise an affirmative defense, the defendant must present "some" evidence, unless the State's case includes evidence supporting the defense). The issue under section 3-2 (*id.* § 3-2) is much more clear-cut. The trial court has to determine whether there is "some" evidence, presented by either the State or the defendant, on the affirmative defense. *Id.* "Some" means any nonzero amount of evidence. In other words, the evidence either exists, or it does not. There is no analysis of the character, weight, or amount of the evidence.

¶ 106    If there is "some" evidence on the affirmative defense, "then the State *must* sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense." (Emphasis added) *Id.* § 3-2(b).

¶ 107    In short, the statute presents the issue in such black and white terms that the issue cannot possibly be reviewed under the deferential lens of the abuse of discretion standard.

¶ 108                    IV. Effect of the Incorrect Standard

¶ 109          The dissenters in *McDonald* pointed out that " 'any standard, for that matter, which purports to give the court "discretion" to decide what the evidence does or does not show—invites the court to substitute its own credibility determination for that of the jury.' " *McDonald*, 2016 IL 118882, ¶ 77 (Burke, J., dissenting, joined by Freeman and Kilbride, JJ.) (quoting *People v. Willett*, 2015 IL App (4th) 130702, ¶ 88). The standard of review misstated by the majority in *McDonald* and reiterated here led to the circuit court's error here, where the court (1) exercised its discretion; (2) made its assessments of the credibility, weight, and conclusions to draw from the evidence; and (3) made a finding that Vesey had not presented sufficient evidence to warrant an instruction on his affirmative defense of self-defense.

¶ 110          The standard of review stated by the majority here and in *McDonald* conflicts with section 3-2 and the standard stated in *Everette* and *Washington*. This court should overrule the misstatement of the standard of review in *McDonald*, 2016 IL 118882, ¶ 42 (majority opinion).


¶ 111                              V. *Stare Decisis*

¶ 112          The majority invokes the principle of *stare decisis* as grounds for using the abuse of discretion standard for review of the circuit court's decision not to instruct the jury on self-defense. I agree with the majority about the importance of *stare decisis* and the need to adhere to settled principles of law unless compelling reasons warrant departure from prior holdings. See *People v. Suarez*, 224 Ill. 2d 37, 50 (2007). We adhere to *stare decisis* "so that the law will not change erratically, but will develop in a principled, intelligible fashion." *People v. Colon*, 225 Ill. 2d 125, 146 (2007).

¶ 113          However, this court has emphasized that in some circumstances we must depart from precedent. The *Colon* court explained:

        "*Stare decisis*, however, is not an 'inexorable command.' [Citation.] If it is clear a court has made a mistake, it will not decline to correct it, even if the mistake has been reasserted and acquiesced in for many years. *** Good cause

to depart from *stare decisis* also exists when governing decisions are unworkable or badly reasoned." *Id.*

¶ 114     The decision in *McDonald* itself showed little regard for *stare decisis*. The *Everette* court unequivocally stated the applicable legal principle: "It is a matter of law whether the defendant has met the evidentiary minimum entitling him to instructions on an affirmative defense." *Everette*, 141 Ill. 2d at 157. The *Washington* court, too, said, "The question of whether sufficient evidence exists in the record to support the giving of a jury instruction is a question of law subject to *de novo* review." *Washington*, 2012 IL 110283, ¶ 19. The *McDonald* majority essentially overruled *Everette* and *Washington* on the standard of review, concluding that those courts did not mean what they said. *McDonald*, 2016 IL 118882, ¶¶ 40-41.

¶ 115     I find good cause to overrule the misstatement of the standard of review in *McDonald*. *Hari*, in particular, shows the problem. Hari, accused of shooting his wife, contended that the shooting resulted from his intoxication due to his ingestion of prescribed medication. *Hari*, 218 Ill. 2d at 278. The circuit court refused a proffered instruction on the affirmative defense of involuntary intoxication. *Id.* The *Hari* court found that evidence that intoxication occurred as an unexpected, unwarned side effect of the medication constituted some evidence supporting the affirmative defense and therefore the circuit court had a duty, as part of protecting Hari's right to due process, to instruct the jury on the affirmative defense. *Id.* at 296-97.

¶ 116     The *Hari* court confusingly said, "where there is some evidence to support an affirmative defense instruction, the trial court's refusal to instruct the jury constitutes an abuse of discretion." *Id.* at 296. If the refusal of the instruction, "where there is some evidence," always counts as an abuse of discretion, it always constitutes error. This is another way of saying the circuit court does not have discretion to refuse the instruction.

¶ 117     The *McDonald* majority further confused the issue by adopting the correct standard in part, as it said, "[i]t is not the province of the trial court to weigh the evidence when deciding whether a jury instruction is justified" *McDonald*, 2016 IL 118882, ¶ 25. The issue of whether any evidence could support a finding on each

of the elements of the affirmative defense presents an issue of law, subject to *de novo* review. *Everette*, 141 Ill. 2d at 157; *Carter*, 32 Ill. 2d at 281.

¶ 118 Thus, although the *Hari* court purported to find an abuse of discretion, the ruling on whether the record includes some evidence supporting the affirmative defense presents an issue of law subject to *de novo* review, and if the record includes some such evidence, the circuit court has no discretion to refuse to instruct the jury on the affirmative defense.

¶ 119 *Everette* and *Washington* stated the correct, applicable standard of review. The *McDonald* court confused the issue by announcing an abuse of discretion standard of review while acknowledging that the circuit court must not weigh the evidence and it must only determine whether any evidence supports the affirmative defense.

¶ 120 The principle of *stare decisis* must not constrain this court from clarifying the law when prior decisions have created confusion. See *Colon*, 225 Ill. 2d at 146. The poorly reasoned *McDonald* decision mistakenly rejected the correct standard of review and adopted an unworkable standard, using an abuse of discretion standard when the circuit court has no discretion. We should overrule the misstatement in *McDonald* of the applicable standard of review.

¶ 121                                     VI. Conclusion

¶ 122 The circuit court has no discretion when it determines, pursuant to section 3-2, as a matter of law, whether some evidence in the record supports the proposed affirmative defense. See 720 ILCS 5/3-2 (West 2022). The circuit court also has no discretion to refuse the instruction, according to section 3-2, if the record includes some evidence, however slight, on each of the elements of the proposed affirmative defense. See *id.*; *Jones*, 175 Ill. 2d at 131-32; *Hari*, 218 Ill. 2d at 296-97; *Washington*, 2012 IL 110283, ¶ 19. Therefore, I would hold that, when the circuit court refuses to instruct the jury on an affirmative defense asserted by the defendant at a criminal trial, we review the court's decision *de novo*.