NOTICE

Decision filed 04/07/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240199-U

NO. 5-24-0199

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 21-CF-584 |
| | ) | |
| TONY E. BOSWELL, | ) | Honorable |
| | ) | Charles C. Hall, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore[*] and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not abuse its discretion by denying defendant's request to instruct the jury on self-defense. Additionally, the trial court's ruling barring defendant from cross-examining the arresting officer regarding a prior finding of misconduct did not deny defendant's right to a fair trial.

¶ 2    Following a Vermilion County jury trial, defendant, Tony E. Boswell, was convicted of aggravated battery and driving while license revoked. On direct appeal, defendant contends that the trial court abused its discretion by denying his request to instruct the jury on his claim of self-defense. Defendant also argues that he was deprived of his right to a fair trial when the court denied his pretrial motion seeking to cross-examine the arresting officer regarding a prior act of

_____

[*]Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

misconduct, wherein the officer was disciplined for lying about a different officer's failure to report an off-duty traffic accident that should have been reported to the police department. For the reasons that follow, we affirm.

¶ 3                              I. BACKGROUND

¶ 4     Defendant was charged by information with two counts of aggravated battery to a peace officer (counts I and II) in violation of section 12-3.05(d)(4) of the Criminal Code of 2012 (Criminal Code). 720 ILCS 5/12-3.05(d)(4) (West 2020). Defendant was also charged with driving while license is revoked (count III) in violation of section 6-303(d-3) of the Illinois Vehicle Code and resisting or obstructing a peace officer in violation of section 31-1(a) of the Criminal Code. 625 ILCS 5/6-303(d-3) (West 2020); 720 ILCS 5/31-1(a) (West 2020). Defendant was later indicted on the same charges.

¶ 5     Prior to trial, defendant filed a motion *in limine* seeking permission to impeach the arresting officer, Troy Nipper, with a prior act of misconduct that involved lying to internal affairs regarding another officer's off-duty motor vehicle accident that should have been reported to the department. In support of his motion, defendant argued that Officer Nipper used excessive force during defendant's arrest, and that this was a new act of misconduct. According to defendant, since Nipper lied about the previous misconduct, he had a motive to lie about the alleged misconduct in this case to avoid further discipline. Finding it irrelevant, and because the jury was going to see the incident on video, the trial court denied defendant's motion.

¶ 6     The jury trial began on August 31, 2023. The State's evidence at trial consisted of the testimony of two law enforcement officers: Officer Troy Nipper of the Village of Tilton and Captain Tye Pasquale of the Vermilion County Sheriff's Department. Officer Nipper testified that on October 12, 2021, he was in uniform and in a marked squad car when he noticed a motorcycle

2

parked in a fire lane in front of an auto parts store. He first ran the registration and then ran defendant's name. After the motorcycle and defendant left the parking lot and drove north on Route 1, Officer Nipper stopped the motorcycle as it neared the eastbound on ramp to Interstate 74.

¶ 7    Officer Nipper testified that, after telling defendant that he was stopped because his driving privileges were revoked, defendant stated he "knew" and asked "for a break." Officer Nipper asked defendant to step to the back of the motorcycle and told him that he was going to be arrested. At the back of the motorcycle, defendant initially turned away from Officer Nipper and started putting his hands behind his back. Nipper took ahold of defendant's left wrist and started to reach for his handcuffs when defendant started to pull away and said, "No." According to Officer Nipper, defendant then told Nipper that he was "lucky" that defendant "didn't whoop [his] ass." Defendant slipped Officer Nipper's grip, and Nipper grabbed defendant's left arm again while he simultaneously called for backup using a lapel mic. As defendant continued to threaten him "and took an aggressive stance," Officer Nipper drew his taser. Nipper testified that defendant continued to threaten him before defendant again pulled away and started "jogging or running" towards the ramp to Interstate 74.

¶ 8    Officer Nipper further testified that in response to defendant's flight, he told defendant to stop several times before deploying his taser. One of the barbs made contact with defendant's left triceps; the other barb did not make contact with defendant. Defendant immediately turned around and swiped at his left triceps. According to Officer Nipper, defendant then started to advance toward him in an aggressive stance and "took a swing" at him. Officer Nipper backed away from defendant, creating some distance between the two men.

3

¶ 9 Officer Nipper testified that defendant walked past him, and he "re-engaged [defendant] from behind" in an effort to "[g]et him down to the ground." Nipper testified that he wrapped his right arm around the top of defendant's right shoulder and that he was "targeting [defendant's] collarbone" so he could "bear [his] weight down" and take defendant to the ground. Officer Nipper said that as the two men started to go to the ground, defendant slipped from his grip and Nipper brought his right arm up and across defendant's chest to block any attack, and at that point, defendant pushed Officer Nipper away. Nipper tried to pull defendant toward him to gain "some type of contact" but only had ahold of defendant's shirt. Defendant shoved him. As Officer Nipper was going backwards, defendant pushed him and then landed partially on top of him. He was able to get out from underneath defendant and was able to flatten defendant out on the ground. An officer from the Vermilion County Sheriff's Department arrived, and the two officers took defendant into custody. Officer Nipper testified that as defendant lay on the ground, he complained that he could not breathe, so they rolled him to his side and eventually were able to escort defendant to the squad car.

¶ 10 Without objection, the squad car video was played for the jury.[1] It does not have any audio. The video is largely consistent with Nipper's testimony. The video shows defendant cooperated with Officer Nipper up to the point that Nipper took defendant's left hand behind his back. Defendant then pulled away from Officer Nipper. Officer Nipper grabbed defendant's arm again, and defendant pulled away from Officer Nipper's grip again. After some discussion between the two men, defendant ran away from Officer Nipper. After Officer Nipper deployed his taser, defendant turned and advanced on Officer Nipper, causing him to retreat. Defendant walked past Officer Nipper, and Nipper approached defendant from behind, appearing to attempt to take ahold

---

[1]The video is a part of the record on appeal and has been reviewed by this court.

4

of defendant's left arm. After defendant pulled away again, Officer Nipper wrapped his right arm over the top of defendant's right shoulder and tried to move defendant away from the traffic and toward the side of the road. They two men then struggled and fell to the ground, with defendant shoving Officer Nipper as he tried to regain his footing. Defendant then appeared to lunge at Officer Nipper, and the two men fell off the right side of the video. A few seconds later, Captain Pasquale entered the video from the left and ran toward where the two men fell before the video ended.

¶ 11    Continuing with his testimony, Officer Nipper told the jury that he was "targeting" defendant's collarbone and trying to get a grip under defendant's shoulder, but that his arm did come in contact with defendant's neck. Nipper testified that he did not try to use that position to his advantage, and he was not trying to put a chokehold on defendant.

¶ 12    On cross-examination, Officer Nipper testified that the squad car video equipment was older and that the audio was "hit or miss." Nipper told defense counsel that his arm contacted defendant's neck but denied putting defendant in a chokehold. Officer Nipper maintained that defendant swung at him, but stated, "I don't know that you can see it clear on the video." Officer Nipper admitted that defendant did not initiate physical contact with him until Nipper had his arm against defendant's throat.

¶ 13    Captain Pasquale testified that he was southbound on Route 1 when he noticed flashing lights in the distance. He heard a radio call asking for assistance. As Pasquale neared the scene, he saw the subject run away from the officer. As he got closer, Pasquale saw the subject turn around and "kind of run" toward the officer. Pasquale described the subject as appearing to be "in an attack position, getting ready to attack the officer." Pasquale had to focus on parking his squad car in the heavy traffic, and when he next focused on the two individuals, he saw them fall to the

5

ground in the grassy area off to the side of the road. Pasquale jumped the concrete barrier between the northbound and southbound lanes, ran across the lanes of traffic while "trying not to get hit by a car," and assisted Nipper with taking defendant into custody. Pasquale and Nipper then placed defendant into a squad car. On cross-examination, Pasquale stated that he never heard defendant threaten anyone. The State rested.

¶ 14 Defendant testified on his own behalf. He admitted that he should not have been driving his motorcycle but disagreed with Officer Nipper's version of their encounter. He denied ever threatening Officer Nipper. Regarding the portion of the video where he started to run, but then turned back around to face Nipper, defendant testified that he "was coming back towards the officer to give up." He denied swinging at Officer Nipper and stated that he never made any contact with Nipper before being placed in a "chokehold."

¶ 15 Regarding the portion of the incident when Officer Nipper approached defendant from behind and put his arm around defendant's neck, defendant testified that "it was hard for him to breathe a little bit there." Defendant testified that he was choking, he "was starting to panic," and "I just tried to get his arm off of my neck and throat." Defendant told the jury that after the two men fell to the ground, Nipper pulled him down. Defendant also told the jury that he pushed Officer Nipper because he "was afraid that he was going to continue choking me" and that he was trying to catch his balance. Regarding the second time the men fell to the ground, defendant stated that he fell because he was being pulled. Defendant denied lunging at or jumping on Officer Nipper.

¶ 16 On cross-examination, defendant stated that he "figured" he was about to be arrested for driving on a revoked license. He stated that while he initially put his hands behind his back, he decided that he was not going to get handcuffed and pulled away from Officer Nipper. Defendant testified that he told Nipper that his mom was "bad off" and that he needed to go see his mom and

6

he "thought we was going to lose her." Defendant admitted that he ran because he did not want to get arrested, and he did not want to be locked up when something happened to her.

¶ 17 Defendant told the prosecutor that, after running, he turned toward Officer Nipper because he "just wanted to get it over with, *** resolve it peacefully." Defendant said it was after he turned around that Officer Nipper tried to "tase" him. Defendant told the jury that after he was tased, he asked, "Dude, what are you doing? I said I just want to get this over with peacefully." It was after he walked past Officer Nipper that Nipper choked him. Following this, defendant then told the prosecutor that he stopped running from Officer Nipper after he got tased. Defendant then testified, "I know I stopped at one point, which your video ain't going to show, you know that. My hands were behind my back. I tried to go peacefully." Defendant denied approaching Officer Nipper menacingly. Defendant admitted that Officer Nipper was not touching him when he pushed Nipper but reiterated that he did it "to keep from getting choked any more." Following defendant's testimony, the defense rested.

¶ 18 Defendant tendered jury instructions on the issue of self-defense. Defendant argued that Officer Nipper had applied a chokehold and cut off his ability to breathe, and that this was an excessive use of force. Because of his fear of being choked again, defendant argued that he was justified in pulling Nipper's arm away from him and pushing Nipper after the men fell to the ground. The trial court noted that defendant was resisting arrest at the time that Officer Nipper's arm came in contact with defendant's neck and found that any contact between Officer Nipper's arm and defendant's neck was incidental and did not depict a chokehold. The trial court further stated that it did not believe defendant feared Officer Nipper. The court denied defendant's request to instruct the jury on self-defense.

7

¶ 19    The jury ultimately found defendant guilty of both aggravated battery to a peace officer and driving while license revoked. Defendant filed a posttrial motion alleging the trial court erred by failing to instruct the jury on the issue of self-defense and by denying him the ability to cross-examine Officer Nipper with the prior disciplinary matter. Defendant's posttrial motion was denied, and defendant filed a timely notice of appeal.

¶ 20                                    II. ANALYSIS

¶ 21    As noted above, defendant raises two issues on appeal. First, he argues the trial court abused its discretion by refusing to instruct the jury on defendant's claim of self-defense. Second, defendant argues that he was deprived of his constitutional right to a fair trial when the court denied his request to cross-examine Officer Nipper regarding the prior act of misconduct wherein Nipper was disciplined for lying about a different officer's failure to report an off-duty traffic accident that should have been reported to the police department. For the reasons that follow, we affirm. We consider each allegation in turn.

¶ 22    First, we consider defendant's contention that the trial court erred by failing to instruct the jury on his theory of self-defense. The justifiable use of force is an affirmative defense. 720 ILCS 5/7-14 (West 2020). If the State establishes the elements of the offense charged, a factfinder can consider a defendant's claim of self-defense only if the defendant has established some evidence of the elements acknowledged by the Illinois Supreme Court in *People v. Jeffries*, 164 Ill. 2d 104 (1995). Those elements are as follows:

> "(1) force is threatened against the person; (2) the person threatened is not the aggressor; (3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) he actually and subjectively believed a danger existed which required the use of the force applied; and (6) his beliefs were objectively reasonable." *Id.* at 128.

8

The six-element *Jeffries* test comports itself with sections 7-1(a) and 7-4 of the Criminal Code. 720 ILCS 5/7-1(a), 7-4 (West 2020); *People v. Vesey*, 2026 IL 130919, ¶ 43.[2]

¶ 23    There are other factors that must be considered when a defendant's use of force is against a police officer. For example, section 7-5 of the Criminal Code "allows a peace officer to use any force he reasonably believes, based on the totality of the circumstances, to be necessary to effect an arrest or defend himself or another from bodily harm while making the arrest." *Vesey*, 2026 IL 130919, ¶ 43. "[A] police officer's use of force can be unlawful *** under section 7-5 if the officer uses more force than reasonably necessary to effectuate an arrest or protect himself or others." *Id.* ¶ 44. Additionally, a police officer's use of force can be unlawful under section 7-5.5, which prohibits police officers from using different kinds of force, including chokeholds and restraints above the shoulders "with risk of asphyxiation" unless deadly force is justified. 720 ILCS 5/7-5.5(a) (West 2020). As used in section 7-5.5, " 'chokehold' means applying any direct pressure to the throat, windpipe, or airway of another. 'Chokehold' does not include any holding involving contact with the neck that is not intended to reduce the intake of air such as a headlock where the only pressure applied is to the head." *Id.* § 7-5.5(c).

¶ 24    Notwithstanding these additional considerations, when a defendant is claiming the justifiable use of force against a police officer, "the defendant must *first establish that the record contains some evidence of each of the elements* listed in *Jeffries*." (Emphasis added.) *Vesey*, 2026 IL 130919, ¶ 46. In this matter the defendant's argument is based upon his claim that Officer Nipper used excessive force—the fourth element from *Jeffries*. "In reviewing the fourth element, that the threatened force was unlawful, if there is some evidence from which a jury could conclude

_____

[2]Defendant cited the Fourth District's decision in *People v. Vesey*, 2024 IL App (4th) 230401, in his brief, acknowledging that the Illinois Supreme Court had granted leave to appeal. Since the Fourth District's decision has now been reversed, we rely upon the Illinois Supreme Court's decision.

the police officer used excessive—and therefore unlawful—force, the self-defense instruction should be given *if there is some evidence of the other elements*." (Emphasis added.) *Id.* ¶ 47.

¶ 25    "When the trial court, after reviewing all the evidence, determines that there is insufficient evidence to justify the giving of a jury instruction, the proper standard of review of that decision is abuse of discretion." *Id.* ¶ 52. "An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *Id.* "It is an abuse of discretion for the court to refuse to give an instruction that is supported by the evidence and accurately states the legal principles applicable to the case." *Id.* "In deciding whether to give a self-defense instruction, the court must determine whether there is some evidence, even slight evidence, to support the theory of self-defense without weighing the evidence." *Id.* ¶ 65. "Where self-defense is not supported by the evidence, a self-defense instruction may properly be refused." *Id.*

¶ 26    Defendant contends that he met all the *Jeffries* elements required for the self-defense instruction, and that Officer Nipper's conduct of placing his arm around defendant's neck and obstructing defendant's airway was an escalation of force that a jury could find to be excessive and unlawful. The State argues defendant did not meet any of the *Jeffries* elements, and that the video evidence defeats any claim that self-defense was relevant under the facts of this case.

¶ 27    *Vesey* requires us to first evaluate whether "the record contains some evidence of each of the elements listed in *Jeffries*." *Id.* ¶ 46. If a defendant fails to establish that the record contains some evidence on any one of the *Jeffries* elements, then the jury should not be instructed on self-defense. *Id.* We first consider the second *Jeffries* element, whether defendant was the initial aggressor. In doing so, we find that defendant was the initial aggressor and that he invited the use of force by resisting arrest.

10

¶ 28    As the video shows, although defendant initially cooperated with Officer Nipper, he pulled his arm away from Officer Nipper as he reached for his handcuffs. As the two men stood in the grassy area on the side of the road, Officer Nipper again took ahold of defendant's left wrist, and defendant again pulled free of Nipper's grip before turning and running away. After Officer Nipper deployed his taser, defendant turned toward Officer Nipper and took an aggressive stance before advancing on Nipper. At this point, Officer Nipper retreated despite not being required to do so. 720 ILCS 5/7-5(a) (West 2020) ("A peace officer *** need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest.").

¶ 29    Officer Nipper testified that defendant swung a fist at him, and although the video is not perfectly clear and the view of defendant is blocked by the officer's body, it is apparent that defendant's arms are moving. It is only when Officer Nipper retreated to the side of the road that defendant moved past him. The video shows Officer Nipper again approached defendant and attempted to engage him from behind, appearing to again reach for defendant's left arm or wrist. In response, defendant appeared to pull away again. It was only at this point that Officer Nipper wrapped his right arm around the top of defendant's right shoulder and tried to move defendant away from traffic and to the side of the road.

¶ 30    While initially pulling away from Officer Nipper on two occasions and running away are not acts of aggression in the traditional sense, they certainly are not peaceable, particularly since "[a] person is not authorized to use force to resist an arrest which he knows is being made *** by a peace officer." *Id.* § 7-7. Defendant's actions in turning on Officer Nipper, taking an aggressive stance, and then advancing on Officer Nipper to the point that he felt the need to retreat backwards and then to the side of the road, however, are acts of aggression.

11

¶ 31    We note that although defendant then walked past Officer Nipper, thereby "retreating" from Nipper, this cannot be considered an act of retreating by an initial aggressor in the traditional sense. While defendant's testimony was that he wanted to "get it over with peacefully," his actions in the video demonstrate otherwise. All defendant needed to do to "get it over with peacefully" and to avoid further escalation was to stop and allow himself to be arrested. As noted, defendant instead continued to walk away from Officer Nipper and toward his motorcycle, and defendant again appeared to pull away from Officer Nipper's grasp.

¶ 32    It is against the backdrop and based upon the totality of the circumstances that Officer Nipper was "justified in the use of any force which he reasonably believe[d] *** to be necessary to effect the arrest and of any force which he reasonably believe[d] *** to be necessary to defend himself or another from bodily harm." *Id.* § 7-5(a). We further note that, under these circumstances, the law allows Officer Nipper to use "force likely to cause death or great bodily harm" if "he reasonably believes, based on the totality of the circumstances, that such force is necessary to prevent death or great bodily harm to himself or such other person." *Id.* Given defendant's continuous acts of noncompliance, coupled with the two men's close proximity to a busy road that posed a safety hazard to both men, the evidence supports the conclusion that defendant was the initial aggressor and that Officer Nipper was justified in his use of force. For this reason, and based upon defendant's continued resistance to a lawful arrest, we find defendant failed to present any evidence that he was not the initial aggressor. Given that defendant failed to meet this *Jeffries* element, we need not consider the remaining elements. *Vesey*, 2026 IL 130919, ¶ 46.

¶ 33    Succinctly stated, the record demonstrates that defendant resisted arrest and invited the use of force by pulling away from Officer Nipper on at least two, and perhaps three, occasions.

12

Defendant ran from Officer Nipper, turned on Nipper, took an aggressive stance toward Nipper, and advanced toward Nipper, causing Nipper to retreat. Defendant never surrendered to Officer Nipper but instead continued to walk away from him. It was only after all this that Officer Nipper forcefully directed defendant away from traffic and took him to the ground. Failing to satisfy any one of the *Jeffries* factors means that defendant's claim of self-defense fails. *Id.* Accordingly, the trial court did not abuse its discretion in denying defendant's request that the jury be instructed on self-defense.

¶ 34 Defendant also contends that in deciding whether to instruct the jury on self-defense, the trial court improperly engaged in fact-finding and therefore invaded the province of the jury. Defendant is correct that the trial court is not allowed to weigh the evidence in determining whether there is some evidence supporting a defendant's claim of self-defense, as doing so would invade the province of the jury. *Id.* ¶ 48.

¶ 35 Defendant specifically points to certain comments made by the trial court as proof that it improperly weighed the evidence. For example, defendant notes that in discussing whether Officer Nipper's use of force was unlawful, the court stated:

> "Now my viewing of the tape over and over and over all morning, I didn't see a chokehold applied. I saw an arm bar go up over the shoulder blade. I say a brief touching, perhaps of the neck, in that area, and an attempt to get over to the other shoulder or armpit, and then both gentlemen tumbled to the ground."

In discussing whether defendant feared for his safety at the time that he shoved Nipper, the court stated:

> "Defendant was already resisting arrest, and in those situations, the law seems pretty clear that unless you can show there's some evidence that [defendant] was acting out of fear for his safety, but he was, if you believe the officer, he was threatening the officer. If you believe him, he wasn't. But I didn't see any evidence, based upon his running away, or then approaching, or then fighting with the officer, and evidence that he was in fear, and it was clear that he knew he was dealing with a police officer that was in uniform, and the fact that the defendant even testified

13

he knew he was going to jail, and he didn't want to go to jail. I don't see, based on all the circumstances, enough facts here to justify the self-defense."

¶ 36 To the extent the trial court may have weighed the evidence by considering whether Officer Nipper employed an "arm bar" or a "chokehold," we find it irrelevant to the resolution of this appeal. Based upon the evidence before the court, including the video, the trial court did not need to consider whether the hold Nipper applied was an "arm bar" versus a "chokehold." As noted above, because of defendant's repeated acts of resistance, Nipper was justified in his use of force, including potentially deadly force. 720 ILCS 5/7-5(a) (West 2020). To the extent that the court considered defendant's fear, we need not consider defendant's argument in light of this court's finding that the record lacks evidence that defendant was not the initial aggressor. This alone precludes defendant from receiving a self-defense instruction. As noted above, defendant's failure to present any evidence on any one of the *Jeffries* factors means that defendant is not entitled to have a self-defense instruction. For these reasons, we find that the trial court did not abuse its discretion by denying defendant's request that the jury be instructed on the issue of self-defense.

¶ 37 Defendant next argues he was denied his right to a fair trial because the trial court barred him from cross-examining Officer Nipper with a prior act of misconduct. As stated above, Officer Nipper was disciplined for lying about a different officer's failure to report an off-duty traffic accident to the police department. The State argues the trial court properly rejected defendant's attempt to introduce a prior disciplinary matter that was unrelated to the facts of this case. We agree with the State.

¶ 38 Prior to trial, the State tendered discovery revealing that in August 2018, a fellow officer was involved in an off-duty motor vehicle accident that should have been reported to the officers' then employer, the Danville Police Department. When Officer Nipper was interviewed by the internal affairs department, he denied knowledge and involvement. When later confronted with

14

contrary evidence, Officer Nipper admitted that his previous statement was a lie. As a consequence, Officer Nipper was found to be in violation of departmental policies and was placed on administrative leave pending dismissal. Officer Nipper resigned his position from the Danville Police Department prior to being dismissed.

¶ 39    Defendant filed a motion *in limine* seeking to impeach Officer Nipper with the prior misconduct, contending that Nipper's use of excessive force during defendant's arrest was a new act of misconduct. According to defendant, since Officer Nipper lied about previous misconduct, he had motive and bias to lie about the claimed use of excessive force during defendant's arrest.

¶ 40    At a hearing on defendant's motion *in limine*, the trial court asked defense counsel what lie he thought Officer Nipper told in the instant case that would justify the impeachment. Defense counsel told the court that the use of force was excessive. When asked how Officer Nipper's 2018 conduct related to defendant's 2021 arrest, defense counsel offered that because Officer Nipper was previously disciplined, he knew that he could face discipline again for new misconduct. For this reason, defense counsel concluded that Officer Nipper therefore had a motive to lie about the use of force to avoid the jury finding that he had, in fact, used excessive force. After lengthy argument on the matter, the court ultimately concluded that because the jury was going to see the "actual incident" on video, Nipper's 2018 incident was not relevant for cross-examination.

¶ 41    On appeal, defendant argues that Officer Nipper's credibility as a witness was "central to the jury's evaluation of the facts" and that "[i]nquiry into Nipper's prior misconduct would have spoken directly to Nipper's bias and motive to lie." The State argues that the court properly noted that Officer Nipper's 2018 disciplinary matter "[did not] have anything at all to do with the proof in this case." The State also contends defendant's argument that a police officer's prior willingness to lie about a fellow officer's off-duty accident means that the officer would lie to the jury to avoid

15

another disciplinary matter for the excessive use of force is both remote and uncertain and was properly excluded. We agree with the State.

¶ 42    "A defendant has a fundamental, constitutional right to confront the witnesses against him, which includes a reasonable right of cross-examination to inquire into a witness's bias, interest, or motive to testify falsely." *People v. Nelson*, 235 Ill. 2d 386, 420-21 (2009). "However, the evidence used to impeach must raise an inference that the witness has something to gain or lose by his testimony; the evidence must not be remote or uncertain." *Id.* at 421. "Generally, a decision on an evidentiary motion, such as a motion *in limine*, is committed to the trial court's discretion and a reviewing court will not disturb that decision absent an abuse of discretion." *Id.* at 420. "An abuse of discretion occurs where the circuit court's decision is arbitrary, unreasonable, or fanciful or where no reasonable person would have taken the position adopted by the circuit court." *People v. Heineman*, 2023 IL 127854, ¶ 59.

¶ 43    Here, defendant maintains that the proper standard of review is *de novo*. In doing so, defendant relies on *People v. Adams*, 259 Ill. App. 3d 995 (1993). The portion of the opinion defendant quotes states: "Although the trial court has no discretion to prohibit *** impeachment [regarding a witness's interest, bias, or motive] entirely, it can control the extent of the cross-examination, assuming a proper subject matter." *Id.* at 1004. *Adams* also notes that " '[e]vidence showing bias must be direct and positive, not remote and uncertain.' [Citation.]" *Id.* The State maintains that the standard of review is abuse of discretion. We agree with the State.

¶ 44    In support thereof, we find *People v. Coleman*, 206 Ill. 2d 261 (2002), instructive. In *Coleman*, the court addressed the defendant's claim that the circuit court erred in denying him the right, during a postconviction evidentiary hearing, to cross-examine a police officer regarding allegations of his prior misconduct. *Id.* at 278. While noting that a defendant has the right to inquire

16

into a witness's bias, interest, or motive to testify falsely, the court also noted that "[t]he evidence used to impeach, however, must give rise to an inference that the witness has something to gain or lose by his testimony. Accordingly, the evidence must not be remote or uncertain." *Id.* The *Coleman* court ultimately concluded that the matters the defendant sought to impeach the officer with were irrelevant and that the circuit court did not abuse its discretion in denying the defendant the opportunity to cross-examine the officer with the prior allegations of misconduct. *Id.* at 282-83. Accordingly, we find that it is proper to review the trial court's ruling regarding relevance of defendant's proffered cross-examination against Officer Nipper under an abuse of discretion standard.

¶ 45    In support of his argument that the trial court erred in denying him the opportunity to cross-examine Officer Nipper with the disciplinary matter, defendant relies primarily on *People v. Phillips*, 95 Ill. App. 3d 1013 (1981). In *Phillips*, the defendant was charged with attempted murder, four counts of aggravated battery, and one count of armed violence. *Id.* at 1014. The victim was an off-duty police officer who had been suspended 15 times in the 10-year period leading up the defendant's charges. *Id.* at 1015. Two of the officer's suspensions were based upon him improperly displaying his weapon and filing a false report. *Id.* The defendant claimed that he only shot the victim after he had seen the victim retrieve a gun from his car and threaten his brother. *Id.* at 1018. The defendant claimed that he was afraid the victim was going to shoot his brother. *Id.* The trial court granted the State's motion *in limine* restricting the defendant from cross-examining the victim with his 15 prior suspensions from the Chicago Police Department. *Id.* at 1019. The appellate court reversed the trial court. *Id.* While the *Phillips* court asserted that "[t]he trial court has no discretionary power to deny the defendant the right to cross-examine the witness to show interest, bias, or motive," the court also acknowledged that "[e]vidence of bias, interest or motive,

17

however, must not be remote or uncertain." *Id.* at 1020. The *Phillips* court found that the evidence of the victim's prior suspensions was not remote because the victim could have been motivated to testify falsely to avoid a further suspension or termination, or to ensure that he continued to receive medical benefits and compensation. *Id.* at 1021.

¶ 46    We find *Phillips* distinguishable. While there was evidence that Officer Nipper had been suspended, that is where the similarities end. Officer Nipper was suspended one time for lying about his knowledge of a fellow officer's failure to report an off-duty accident. By contrast, the officer in *Phillips* had been suspended 15 times in the 10-year period leading up to the incident in question, and two of those suspensions were based upon the same type of misconduct the defendant alleged: that the officer had improperly displayed his weapon. In other words, the officer's previous misconduct in *Phillips* was directly related to the defendant's defense. By contrast, Officer Nipper's previous misconduct had nothing to do with the use of excessive force, or indeed even the arrest of another person, and therefore had very little to do with defendant's defense.

¶ 47    Defendant's contention that Officer Nipper had a motive to lie about his use of force, or the circumstances giving rise to the need to use the force employed, was based upon his argument that Nipper would face discipline for his actions during defendant's arrest. Although this argument may raise an inference that Officer Nipper had something to gain or lose by his testimony, it is based upon speculation and therefore can fairly be considered remote and uncertain. Officer Nipper's prior misconduct—lying to help a fellow officer regarding an off-duty motor vehicle accident—did not involve the excessive use of force. Defendant failed to show how the fact that Nipper was once disciplined for lying about an act that occurred while off duty would translate to a need to lie to the jury about his actions while arresting defendant that were preserved by his squad car camera. Defense counsel made no indication to the trial court that he had information

18

showing that Nipper would face departmental discipline for his use of force in arresting defendant nearly two years prior to the start of the trial. There was nothing to suggest that defendant made a complaint to the department regarding Officer Nipper's actions, or that there was or even would be an investigation. Defendant's suggestion regarding the same is speculative and uncertain. The evidence used to impeach a witness must raise an inference that the witness has something to gain or lose by his testimony, and that "evidence must not be remote or uncertain." *Nelson*, 235 Ill. 2d at 421. The trial court found that Officer Nipper's 2018 discipline "doesn't have anything at all to do with the proof in this case" and that "[t]here's really no authority for allowing [the impeachment], other than the general authority that [defense counsel] cite[s] about wide latitude and cross examination." In light of the fact that the jury would "see the interaction, the physicality or lack thereof" on the video, the court concluded that Officer Nipper's 2018 disciplinary matter was irrelevant. We agree with the trial court's assessment.

¶ 48 For these reasons, we cannot conclude that the trial court's decision was arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it. *Vesey*, 2026 IL 130919, ¶ 52. Accordingly, the trial court did not abuse its discretion in denying defendant the opportunity to cross-examine Officer Nipper with his prior discipline.

¶ 49                                    III. CONCLUSION

¶ 50 For the foregoing reasons, we affirm defendant's Vermilion County conviction where the trial court did not abuse its discretion by denying defendant's request for a self-defense instruction or by denying defendant's request to impeach the arresting officer with a prior disciplinary matter.

¶ 51 Affirmed.